UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOE LOUIS DeLEON,

    Petitioner,                      CASE NO. 2:18-cv-10684

v.                                        PAUL D. BORMAN
                                        UNITED STATES DISTRICT JUDGE

BRYAN MORRISON,

    Respondent.
_____/

**OPINION AND ORDER DENYING PETITIONER'S REQUEST FOR A STAY AND DISMISSING THE HABEAS PETITION WITH PREJUDICE**

## I. Introduction

Petitioner Joe Louis DeLeon filed a petition for the writ of habeas corpus under 28 U.S.C. § 2254. (ECF No. 5.) The pleading challenges Petitioner's state conviction for criminal sexual conduct (CSC) on grounds that he was denied a public trial, his trial attorney did not object to the error, and his appellate attorney failed to litigate the claim on direct appeal.

Respondent Bryan Morrison, through the Michigan Attorney General, filed an answer to the petition in which he argues that Petitioner did not exhaust state remedies for his claims and that the claims lack merit. (ECF No. 10.) In a reply brief, Petitioner concedes that he did not exhaust state remedies for his claims. He

has asked the Court to stay this case so that he can return to state court, develop the record, and raise his claims at all levels of state-court review. (ECF No. 12.)

The Court agrees with Respondent that Petitioner's unexhausted claims lack merit. Accordingly, the Court will deny Petitioner's request for a stay and dismiss the habeas petition with prejudice.

## II. Background

Petitioner was charged in Eaton County, Michigan with two counts of first-degree CSC and one count of second-degree CSC. (ECF No. 11-1, PageID.65.) Following a jury trial in Eaton County Circuit Court, the jury found Petitioner guilty of one count of first-degree CSC, *see* Mich. Comp. Laws § 750.520b(1)(a) and (2)(b) (sexual penetration of someone under the age of 13 by an individual 17 years of age or older), and one count of second-degree CSC, *see* Mich. Comp. Laws § 750.520c(1)(a) and (2)(b) (sexual contact with someone under the age of 13 by an individual 17 years of age or older). (ECF No. 11-1, PageID.65, 69.) The jury acquitted Petitioner of the second count of first-degree CSC. *Id*.

The trial court initially sentenced Petitioner as a habitual offender to life imprisonment for the first-degree CSC and to a consecutive term of 20 to 30 years in prison for the second-degree CSC, with credit for 225 days. (ECF No. 11-4, PageID.572-73.) Forty-three minutes after the proceeding concluded, the court reconvened the matter due to an alleged problem with the life sentence. (*Id*. at

2

PageID.574.)  The prosecutor then explained that Petitioner's life sentence would make him eligible for parole in 10 years and that would violate the CSC statute, which carried a mandatory minimum sentence of 25 years.  In other words, according to the prosecutor, Petitioner would not be eligible for parole under the CSC statute until he served a minimum sentence of 25 years for first-degree CSC and his consecutive minimum sentence of 20 years for second-degree CSC.  (*Id*. at PageID.574-75.)  The prosecutor suggested that the court amend the sentence to a term of 25 to 37½ years in prison for the first-degree CSC and to a consecutive term of 20 to 30 years in prison for the other count.  (*Id*. at PageID.575.)

Defense counsel agreed with the prosecutor's argument and stated that, after reading the statute and discussing the matter with the prosecutor, he thought that the statute spoke for itself.  (*Id*. at PageID.575-76.)  The trial court then vacated the life sentence and sentenced Petitioner to a term of 35 to 70 years for first-degree CSC, consecutive to Petitioner's sentence of 20 to 30 years for second-degree CSC.  (*Id*. at PageID.576.)

Petitioner appealed his convictions and sentence, but he did not object to the amended sentence.  Instead, he argued through counsel that (1) there was insufficient evidence to support his conviction for second-degree CSC, and (2) the trial court relied on facts, which the jury did not find beyond a reasonable doubt, to increase his sentence. (ECF No. 11-8, PageID.674-75.)  On November 15, 2016,

the Michigan Court of Appeals rejected Petitioner's claims and affirmed his convictions in a published opinion. *See People v. DeLeon*, 317 Mich. App. 714 (2016).

Petitioner raised the same claims and three new claims in an application for leave to appeal in the Michigan Supreme Court. (ECF No. 11-9, PageID.718-37.) The three new claims alleged that: (1) trial counsel was ineffective for failing to investigate, obtain evidence, produce certain witnesses, make certain objections and requests at trial, forward notes and reports to him, and object to the prosecutor's misconduct; (2) the prosecutor committed misconduct during closing arguments; and (3) appellate counsel was ineffective for failing to raise Petitioner's claims about trial counsel and the prosecutor, request an evidentiary hearing, obtain Petitioner's notes from trial counsel, and respond to his requests. (*Id*. at PageID.724-33.) On May 31, 2017, the Michigan Supreme Court denied leave to appeal because it was not persuaded to review the issues. *See People v. DeLeon*, 500 Mich. 1002 (2017).

On February 26, 2018, Petitioner commenced this case by filing a "motion for stay and abeyance." (ECF No. 1.) He stated that he wanted to exhaust his state remedies for three claims before filing a petition for the writ for habeas corpus. The three unexhausted claims alleged that (1) he had new reliable evidence of his innocence, (2) trial counsel was ineffective for failing to investigate and discover

4

the evidence, and (3) appellate counsel was ineffective for failing to investigate the evidence and locate exculpatory witnesses. On April 9, 2018, the Court denied Petitioner's motion and dismissed his case without prejudice because Petitioner had not filed a habeas petition with his motion, and his motion was not an adequate substitute for a habeas petition. (ECF No. 4.)

Meanwhile, on March 26, 2018, Petitioner filed a motion to correct or modify his sentence in the state trial court. (ECF No. 11-5.) The primary basis for his motion was that the trial court lacked jurisdiction to vacate the sentence for life imprisonment and then sentence him to a term of 35 to 70 years. (*Id.* at PageID.579, 584.) Petitioner also claimed that the prosecutor and trial court had misunderstood a Michigan statute and that the amended sentence was excessive because he was 42 years old at his sentencing, and he had no reasonable prospect of serving the sentence. (*Id*. at PageID.579-82.)

Finally, Petitioner argued that, if the trial court thought his issues were not properly preserved, his trial attorney was ineffective for not objecting at his sentencing, and appellate counsel was ineffective for not raising his claim on direct appeal. (*Id*. at PageID.582.) Petitioner asked the trial court to vacate the "excessive" sentence and to re-sentence him to the original sentence of life imprisonment. (*Id.*) At no point did he allege that he was denied a public sentencing.

5

On August 28, 2018, the trial court denied Petitioner's motion to correct or modify his sentence. The court stated that it did not have the authority to modify a valid sentence, that Petitioner's brief was untimely, and that even if the brief had been filed in a timely manner, the sentence was not invalid in any way. (ECF No. 11-7.)

Petitioner appealed the trial court's decision to the Michigan Court of Appeals. He claimed that the trial court erred in denying his motion, that the court lacked the authority to modify the initial sentence, and that his new sentence was excessive. (ECF No. 11-10, PageID.784.) The Michigan Court of Appeals denied leave to appeal for lack of merit in the grounds presented to the court. *See People v. DeLeon*, No. 346625 (Mich. Ct. App. June 14, 2019).

Petitioner raised the same claims in an application for leave to appeal in the Michigan Supreme Court. (ECF No. 11-11, PageID.843-44, 847.) In a subsequent motion, he asked the supreme court for permission to add a new ground to his application for leave to appeal. (*Id.* at PageID.923-24.) He then argued for the first time that he was deprived of his right to a public trial, that defense counsel was ineffective for failing to object to the imposition of a sentence while the courtroom was closed, and that appellate counsel was ineffective for failing to litigate his claim on direct appeal. (*Id.* at PageID.926, 932-35.) On February 4, 2020, the Michigan Supreme Court granted Petitioner's motion to add an issue, but

it denied leave to appeal because it was not persuaded to review the questions presented to the court. *See People v. DeLeon*, 505 Mich. 975 (2020).

On February 28, 2020, Petitioner returned to this Court and filed a petition for the writ of habeas corpus. (ECF No. 5.) His sole ground for relief reads:

> Petitioner was deprived of his rights under the Sixth Amendment to a public trial and the effective assistance of counsel where defense counsel failed to object to the imposition of Petitioner's sentence while the courtroom was totally closed to the public[,] and appellate counsel failed to litigate this claim on direct appeal.

(*Id*. at PageID.14, 16.) The Court then re-opened this case, directed the Clerk of Court to serve the habeas petition on the State, and directed Respondent to file a response to the habeas petition. (ECF No. 7.)

Respondent subsequently filed an answer in opposition to the petition. (ECF No. 10.) As noted above, he maintains that Petitioner failed to exhaust his remedies in state court and that the claims also lack merit. (ECF No. 10, PageID.36.) Petitioner filed a reply in which he asks the Court to stay his case while he exhausts state remedies for his claims. (ECF No. 12.)

### III. Discussion

#### A.   Exhaustion of State Remedies

The doctrine of exhaustion of state remedies, codified at 28 U.S.C. § 2254(b)(1), requires state prisoners to "give the state courts an opportunity to act on [their] claims before [they] present[] those claims to a federal court in a habeas

7

petition." *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). To satisfy this requirement, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *Id*. at 845. This means that a prisoner must "fairly present" the factual and legal basis for each claim in the state court of appeals and the state supreme court before raising the claims in a federal habeas petition. *Wagner v. Smith*, 581 F.3d 410, 414-15 (6th Cir. 2009).

Petitioner did not raise his habeas claims in the state trial court or in the Michigan Court of Appeals. He first raised the claims in a motion to add an issue to his application before the Michigan Supreme Court. Although the Michigan Supreme Court granted the motion, presentation of a claim to a state's highest court on discretionary review, without more, does not constitute "fair presentation" of the claim; nor does it satisfy the exhaustion doctrine. *Castille v. Peoples*, 490 U.S. 346, 349-51 (1989). Petitioner, in fact, concedes that he did not properly exhaust his claims at all levels of the state appellate court system, and he has asked the Court to stay his case while he pursues post-conviction remedies in state court. (ECF No. 12, PageID.955-57, 975-76.)

In *Rhines v. Weber*, 544 U.S. 269 (2005), the United States Supreme Court approved a "stay and abeyance" procedure which allows a federal district court to hold a habeas petition in abeyance while the prisoner returns to state court to

8

pursue state remedies for previously unexhausted claims. "Once the petitioner exhausts his state remedies, the district court will lift the stay and allow the petitioner to proceed in federal court." *Id*. at 275-76.

But "stay and abeyance should be available only in limited circumstances." *Id*. at 277. A stay is appropriate when the petitioner had good cause for the failure to present his claims first in the state courts, the unexhausted claims are not plainly meritless, and the prisoner is not engaged in abusive litigation tactics or intentional delay. *Id*. at 277-78.

Petitioner's habeas claims lack substantive merit for the reasons given below. As such, he is not entitled to a stay. And because the exhaustion rule is not a jurisdictional requirement, *Peoples*, 489 U.S. at 349; *Wagner*, 581 F.3d at 415, the Court denies Petitioner's request for a stay, and proceeds to address the merits of his claims. The Court's review is *de novo*, because no state court adjudicated the merits of Petitioner's claims, and the deference due to state-court decisions under the Antiterrorism and Effective Death Penalty Act of 1996 does not apply. *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003).

### B. The Merits

### 1. Legal Framework

Petitioner's ground for relief implicates his Sixth Amendment rights to counsel and a public trial. "[T]he right to counsel is the right to effective

assistance of counsel." *Kimmelman v. Morrison*, 477 U.S. 365, 377 (1986). When a public-trial issue is raised on collateral review as an ineffective-assistance-of-counsel claim, the defendant bears the burden of showing two things: that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Weaver v. Massachusetts*, 137 S. Ct. 1899, 1910 (2017) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)).

"[T]he proper standard for attorney performance is that of reasonably effective assistance." *Strickland*, 466 U.S. at 687. "]T]he defendant must show that counsel's representation fell below an objective standard of reasonableness." *Id*. at 688. To establish prejudice, the defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. The same standards apply to claims of ineffective assistance of appellate counsel. *Smith v. Robbins*, 528 U.S. 259, 285 (2000).

The Sixth Amendment also guarantees the accused in a criminal case the right to a public trial. U.S. Const., amend. VI. This right is applicable to the States through the Fourteenth Amendment, *Argersinger v. Hamlin*, 407 U.S. 25, 27 (1972), and it entitles the accused at the very least "to have his friends, relatives and counsel present," no matter what the offense was. *In re Oliver*, 333 U.S. 257, 271-272 (1948).

### 2. Application

At issue here is the brief proceeding where the trial court vacated the life sentence for Petitioner's first-degree CSC conviction and then sentenced Petitioner to a term of 35 to 70 years for the offense. Although that proceeding occurred more than a month after Petitioner's trial, "the Sixth Amendment right to a public trial attaches at sentencing proceedings." *United States v. Rivera*, 682 F.3d 1223, 1229 (9th Cir. 2012). "The public sentencing of criminal defendants is not merely to provide a right to an individual defendant but also to promote the 'public's trust in the judicial institution [and] provide the public with the assurance[] that creates that trust.'" *United States v. Sorrell*, 365 F. App'x 672, 677-78 (6th Cir. 2010) (Clay, C.J., dissenting) (quoting *Rita v. United States*, 551 U.S. 338, 356 (2007)) (first alteration in original, second alteration added).

It is clear from the record before the Court that the initial sentencing, at which Petitioner was sentenced to life imprisonment, was open to the public, because the complainant and her parents addressed the trial court. *See* 8/21/15 Sentencing Tr. (ECF No. 11-4, PageID.556-564). It is also obvious from the record that the prosecutor, defense counsel, and Petitioner were present when the trial court vacated the life sentence and sentenced Petitioner to a term of 35 to 70 years. (*See id*. at PageID.574.) Whether anyone else, besides the trial judge and court reporter, were present at that point is not clear from the record. Petitioner

11

claims in an unnotarized affidavit dated December 15, 2019, that no one else, not even members of his family, the victim, or the victim's family, were present and that he did not waive his right to a public trial. (ECF No. 5, PageID.23.)

      Nevertheless, the point at which the trial court amended the sentence appears to have been conducted in the courtroom, as opposed to a more secluded place, such as the judge's chambers. At no point did the trial court announce that it was closing the courtroom to the public or preventing anyone from observing the proceeding. And there is no reason to believe that closing the courtroom was necessary for security reasons or to protect the integrity of the proceeding. It is more likely that interested parties had dispersed by then, because Petitioner was remanded to the custody of the county sheriff after the initial sentencing.

      Petitioner's own affidavit fails to allege that the trial court closed the courtroom. He merely avers in the affidavit, that the only people present in the courtroom during the amended sentencing were the sentencing judge, the prosecutor, the court reporter, defense counsel, and himself. (ECF No. 5, PageID.23.) This averment does not prove that the public was precluded from attending the amended sentencing. And as Respondent points out, if the trial court did close the courtroom, Petitioner could have provided some proof of that by submitting an affidavit from the sentencing judge, the prosecutor, the court reporter, or his own attorney to support his claim.

To summarize, Petitioner has not demonstrated that he was denied his right to a public sentencing. Therefore, his public-trial issue lacks merit, and his former attorneys were not ineffective for failing to object or to raise the issue. "Omitting meritless arguments is neither professionally unreasonable nor prejudicial." *Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013).

### IV. Conclusion and Order

For the reasons given above, the habeas petition is **DENIED**.

The Court also **DECLINES** to issue a certificate of appealability, because Petitioner has not made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). In addition, reasonable jurists could not disagree with the Court's resolution of Petitioner's constitutional claims, nor conclude that the claims deserve encouragement to proceed further. *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). However, if Petitioner does appeal this decision, he may proceed *in forma pauperis* on appeal without further authorization from this Court, because an appeal could be taken in good faith. 28 U.S.C. § 1915(a)(3).

SO ORDERED.

s/Paul D. Borman
PAUL D. BORMAN
Dated: November 30, 2021   UNITED STATES DISTRICT JUDGE